[Crim. No. 351. Fifth Dist. Dec. 21, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN LEE SPARKS, JR., Defendant and Appellant.

Barbara A. Sena, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and Robert J. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

STONE, J.—Defendant was found guilty, after trial by a jury, of count one, robbery of the first degree, count two, assault by means of force likely to produce great bodily injury, and count three, burglary. He has taken this appeal from the judgment and sentence as to each of the three counts.

Although defendant does not question the sufficiency of the evidence to support the judgment, having appealed on procedural and constitutional grounds, the facts are briefly stated to provide a framework for discussion of the points raised on this appeal.

On July 7, 1966, defendant and an accomplice, wearing nylon stockings over their heads and faces, forcibly entered the home of Mrs. Connie Walton between 10 and 12 p.m. Defendant knocked Mrs. Walton to the floor, beat her with a heavy object, demanded money, and held her to the floor with his foot while rummaging through a chiffonier. His accomplice slapped and pushed Mrs. Walton's 9-year-old niece upon a bed in the same room, taped her mouth, pointed a shotgun at her and asked defendant if he should kill the child. Defendant said "No." The men took Mrs. Walton's purse, a gun and other personal belongings, and left.

Mrs. Walton had known defendant for some time, as he had resided across the street from her house. In fact, he had been in her home several times, the last time shortly before the robbery. Mrs. Walton recognized him as he entered the door, and Shirley, the 9-year-old niece who was acquainted with defendant, picked his picture out of seven photographs shown to her by the police. Both Mrs. Walton and Shirley identified defendant during the course of the trial.

■ Defendant contends the court erred in the manner in which possible forms of verdict were explained to the jury before the jurors were taken to the jury room for deliberations. The court first read in full the form of verdict to be used if the jury should find defendant guilty of first degree robbery. The court then said: "The next verdict is the same, only it charges 'Second Degree Robbery.' The next verdict relates to Count Two, which has to do with Assault With Great Bodily Harm. One verdict is 'Guilty' and one is 'Not Guilty.' And there is one verdict reading the same as the

others, in which the Defendant is found guilty of First Degree Murder as charged in Count Three.''

The court reporter, realizing that the judge had inadvertently said ''first degree *murder*'' rather than ''first degree burglary'' said: ''Your Honor, will you please read that last verdict again.'' The court then correctly read the verdict in full.

Defendant places great emphasis on the court's inadvertent language, ''first degree murder,'' arguing that this slip of the tongue undoubtedly influenced the jury and prevented defendant from having a fair trial. We cannot believe this inadvertent misstatement, which was rectified immediately, gave the jurors any idea that the court thought defendant was guilty of murder or of any other particular crime. The jury had heard the entire case—the evidence, the argument and the instructions—before the verdict forms were presented. If a slip of the tongue of this character influenced the jurors and caused them to find defendant guilty rather than not guilty, our whole jury system must fail as this would be tantamount to a holding on our part that the average juror lacks the necessary intelligence and common sense to act as a trier of fact.

■ Defendant also alleges prejudicial error because the trial judge read the ''guilty'' verdicts before reading the ''not guilty'' verdicts. Perhaps it would have been better had the trial judge read the pertinent ''not guilty'' verdict after each ''guilty'' verdict, but we do not deem it reversible error to follow a different order. It is even possible that jurors have a better understanding of the distinction between degrees of a crime when verdicts of first and second degree are explained one immediately following the other. Moreover, it can be argued with equal strength that a jury is more likely to remember the last verdict read, particularly where, as here, it is a clear and concise ''Not guilty as charged.'' In any event, the court instructed the jury: ''Now, the order in which I have read or referred to these verdicts has no significance in itself. These verdicts have been prepared for the convenience of the Jury. Use such of them as your final deliberations dictate.''

· ■ It is well settled in California that: ''It will be presumed that the jurors were true to their oaths and followed the various admonitions and instructions of the court.'' (*People* v. *Burkhart*, 211 Cal. 726, 733 [297 P. 11]; *People* v. *Isby*, 30 Cal.2d 879, 896-897 [186 P.2d 405].)

 In considering the question of error, it is significant that defendant neither voiced objection nor asked for an admonition when the verdict forms were presented to the jury. If a party deems prejudicial an act or statement of the presiding judge, of opposing counsel, or of any official of the court, it is essential that he call the matter to the attention of the judge when the event occurs, so the error may be corrected. The reason for the rule is well expressed in *Sommer* v. *Martin*, 55 Cal.App. 603, 610 [204 P. 33], as follows: " 'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' [Citation.] "

 Defendant's failure to raise the point in the lower court leads us to another assignment of error that was not raised below. Defendant asserts the jury that tried him was selected from a panel which included fewer Negroes than non-Negroes in proportion to the general population, in violation of the due process and equal protection clause of the Fourteenth Amendment to the federal Constitution. Although defendant concedes that no challenge was taken to the panel before a juror was sworn, as required by Penal Code section 1060, he contends he can raise this question for the first time on appeal because as to him section 1060 is unconstitutional.

If we understand defendant aright, his position is that a state procedural rule cannot control the manner in which a defendant must assert a federal constitutional right. We do not reach this issue because defendant not only failed to question the manner in which the jury panel was selected, before the first juror was sworn, as required by Penal Code section 1060, but he did not raise the question in the lower court at any time, either during the trial or in his motion for a new trial.

Defendant has appended declarations to his brief purporting to show that the percentage of Negroes who served on jury panels in Madera County for the year of his trial and the two years preceding was smaller than the percentage of Negroes among the general population of the county. The point is obviously an afterthought and since it is well settled

in California that on a direct appeal from a judgment a reviewing court will not consider matters outside the record, the issue is not properly before us. The long established rule that a reviewing court is confined to the record was recently reiterated by the Supreme Court, in *People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161], as follows: ". . . here the prior conviction is sought to be challenged for the first time on direct appeal from the judgment wherein such prior was found to be true, whereas in the earlier cases the challenge was brought through collateral attack after such judgment had become final. This difference is a significant one. It is elementary that the function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, and that 'Matters not presented by the record cannot be considered on the suggestion of counsel in the briefs.' [Citation.]''

Defendant concludes his 11th-hour assertion that the jury was improperly impaneled, with the following request: "Appellant is not asking this court to reverse the trial court, but rather to remand for a hearing which can determine once and for all the claim that he makes here."

The answer lies in the rule, stated in *People* v. *Merriam, supra,* that on direct appeal the reviewing court is confined to the record. We cannot remand a case to the trial court for the purpose of trying an issue raised for the first time on appeal.

■ There remains defendant's contention that he suffered double punishment, in violation of Penal Code section 654, because all three counts upon which he was sentenced stem from the same transaction. While it is true that the counts all arise out of the same transaction, the court was careful to sentence defendant in a manner that does not offend Penal Code section 654, as articulated in *People* v. *McFarland,* 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449]. The court followed the procedure outlined in *People* v. *Niles,* 227 Cal. App.2d 749, 755-756 [39 Cal.Rptr. 11], and *People* v. *Gomez,* 252 Cal.App.2d 844, 859-860 [60 Cal.Rptr. 881], and avoided error by staying the sentences imposed as to counts two and three. The court said: "The execution of the sentence on Count Two is hereby stayed pending appeal, if any, and the service of your sentence on Count One; such stay to become permanent upon completion of the sentence on Count One.

"The execution of the sentence on Count Three is hereby stayed pending appeal, if any, and the service of your sen-

tence on Count One; such stay to become permanent upon completion of the sentence on Count One.''

Defendant asks what happens to the sentences on counts two and three if the conviction as to count one is reversed. Were this to occur, there would be a remand to the trial court for further proceedings, but we are not reversing as to count one. When defendant has served his sentence as to count one, the stay of execution as to sentences on counts two and three will become permanent. In view of our affirmance of the judgment, the sentences as imposed do not violate Penal Code, section 654.

■ On the other hand, the armed clause in the judgment, which defendant does not mention, automatically imposes a sentence consecutive to the sentence on count one, and does constitute double punishment. Defendant was convicted of robbery first degree because he was armed (Pen. Code, § 211a). Additionally, pursuant to Penal Code sections 969c and 3024, he was found to have been armed with a deadly weapon which subjected him to a mandatory consecutive sentence of not less than five years nor more than ten years, under Penal Code section 12022. This consecutive sentence is predicated upon possession of a firearm, the same reason that the robbery was determined to be of the first degree with a minimum sentence of five years rather than second degree robbery with a minimum sentence of one year. (Pen. Code, § 213.) Insofar as the finding that defendant was armed when he committed robbery of the first degree subjects him to a second, and consecutive, sentence for the same act, it must be expunged from the judgment. (*People* v. *Thomsen,* 239 Cal. App.2d 84, 98 [48 Cal.Rptr. 455].)

The judgment is modified by striking therefrom the following language: ''Defendant was charged and admitted being, or was found to have been armed with a deadly weapon at the time of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections 969c and 3024.''

In all other respects the judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1968.