[Crim. No. 13082. Second Dist., Div. Five. Mar. 6, 1968]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS WAYNE SMITH, Defendant and Appellant.

Harvey M. Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce William Dodds, Deputy Attorney General, for Plaintiff and Respondent.

AISO, J. pro tem.*—Defendant Thomas Wayne Smith appeals from a judgment sentencing him to the state penitentiary on two first degree robberies (counts I and II) and one second degree robbery (count IV) in violation of sections 211 and 211a of the Penal Code. The judgment further recites that "defendant was armed as alleged" at the time of the first degree robberies and that the "Sentences as to Counts 1, 2 and 4 are ordered to run CONSECUTIVELY."

Count I of the information charged Smith and his codefendant Larry Edward Monfort with having robbed Vinson Schendel on or about March 15, 1966, and further alleged that defendants were armed with a deadly weapon, to wit, a .32 caliber automatic pistol in committing the offense.

Count II charged Smith and Monfort with having robbed Vinson Schendel on or about March 29, 1966, and with being armed with a deadly weapon, to wit, a .32 caliber automatic pistol on the occasion of this offense.

Count III charged Monfort alone with an armed robbery on or about March 25, 1966, of one Robert S. Fink and being armed with a deadly weapon on that occasion.

Count IV charged defendant Smith alone with having

*Assigned by the Chairman of the Judicial Council.

robbed Clara [*sic*] Schafer on or about March 14, 1966, and being armed with a deadly weapon, to wit, a .32 caliber automatic pistol on the occasion of this robbery.

Both Smith and Monfort were additionally charged with prior felony convictions; Smith of illegal possession of marijuana (Health & Saf. Code, § 11530) and Monfort of robbery (Pen. Code, § 211).

Monfort, represented by private counsel, pleaded guilty to the three counts of armed robbery charged against him in counts I, II and III. Defendant Smith, represented by a deputy public defender, admitted the alleged prior felony conviction out of the presence of the jury, and proceeded to trial before a jury on the three counts of robbery charged against him in counts I, II and IV of the information. The jury found him guilty on all three counts, fixing the degree of the robberies charged in counts I and II to be of the first degree and that charged in count IV to be of the second degree. The jury also returned separate verdicts as required by section 1158a of the Penal Code finding the allegations of defendant being armed at the time of committing the two robberies charged in counts I and II true, but the similar allegation charged in count IV not true.

Defendant's court-appointed appellate counsel advances the following contentions of error:[1] (1) the findings of being armed with a deadly weapon should have been stricken upon the jury's finding the robberies to be of the first degree because committed with a deadly weapon where the particular defendant was not himself personally so armed; (2) the showing of identification photographs to prosecution witnesses prior to their in-court identification of defendant violated defendant's constitutional rights; and (3) the adverse statements of a defendant in a presentence probation officer's report may not be used against him in considering his eligibility for probation and sentencing him without an affirmative compliance with the *Miranda*[2] rules by a probation officer conducting a presentence investigation in the absence of defense counsel.

The facts and evidence necessary to disposition of these respective contentions will be set forth as they are taken up seriatim. We have concluded that contention (1) has merit, but that contentions (2) and (3) do not.

[1]Not in order taken up in appellant's briefs.

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

RECITAL OF BEING ARMED WITH DEADLY WEAPON
IMPROPER

The evidence amply establishes that when Smith and his codefendant Monfort robbed Vinson Schendel on March 15, 1966, and again on March 29, 1966, Monfort was armed with a .32 caliber automatic pistol. In striking contrast, the evidence is completely barren as to Smith's having been armed.

*People* v. *Thomsen* (1965) 239 Cal.App.2d 84, 97-98 [48 Cal.Rptr. 455], held it improper for the judgment to recite that defendant was armed with a deadly weapon at the time of the offense where the conviction for first degree robbery is predicated upon a confederate being so armed in course of committing the crime. The defendant was being subjected to increased punishment, the court reasoned, just by the conviction for first degree robbery rather than second degree robbery carrying a lesser punishment. And since an essential factor in the finding of first degree is the use of a deadly weapon, the rationale of *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417], prohibited applying section 12022 of the Penal Code to increase the punishment.

It will be remembered that *In re Shull, supra,* held increased punishment provisions of a predecessor statute to section 12022 inapplicable where the defendant had been convicted for an assault with a deadly weapon (Pen. Code, § 245), stating at page 751:

"Briefly, the Legislature has fixed the punishment for an assault where a deadly weapon is used, a particular crime, and it is not to be supposed that for the same offense without any additional factor existing the added punishment should be imposed. In felonies where a deadly weapon is not a factor in the offense, the additional punishment is imposed by section 3 of the Deadly Weapons Act, because of the additional factor of a deadly weapon being involved.

"The foregoing view of the legislative intent is fortified by the very wording of section 3. It refers to the commission of a felony *as complete in itself* and then *adds* 'while armed' with a pistol. The felony of assault with a deadly weapon would not be complete in itself unless the element of the weapon were present. Hence, there is no occasion for *adding* the weapon factor." (Italics in original text.)

*People* v. *Bryant* (1957) 154 Cal.App.2d 121, 130-131 [315 P.2d 734], held that *In re Shull, supra,* likewise rendered inapplicable section 3024 of the Penal Code to a conviction for

an assault with a deadly weapon.

In the recent case of *People* v. *Sparks* (1967) 257 Cal.App. 2d 306, 311-312 [64 Cal.Rptr. 682], the court which had rendered the opinion in *Thomsen* (1965) *supra,* 239 Cal.App. 2d 84, 97-98, extended its holding therein to one who himself was armed and convicted of first degree robbery and ordered the finding that defendant was armed "pursuant to Penal Code, sections 969c and 3024" expunged from the judgment so as to eliminate additional punishment under section 12022 of the Penal Code.

Upon the question in issue in this case as to whether sections 969c, 3024 and 12022 of the Penal Code apply to a defendant who was not himself armed with a deadly weapon but found guilty of first degree robbery because of his confederate being so armed, the cases of *People* v. *Stevens* (1939) 32 Cal.App.2d 666 [90 P.2d 595] and *People* v. *Kiser* (1937) 22 Cal.App.2d 435 [71 P.2d 98] are no longer controlling following the 1949 amendment to section 1203 of the Penal Code providing that a person who is not himself personally armed is eligible as an applicant for probation. (*People* v. *Perkins* (1951) 37 Cal.2d 62 [230 P.2d 353]; Civ. Code, § 3510.)

In view of the foregoing authorities, the trial court erred in refusing to strike the special verdicts (under Pen. Code, § 1158a) upon defendant's motion for new trial when his trial counsel called the trial court's attention to the evidence being devoid of any showing that defendant Smith was personally armed in course of committing the first degree robberies for which he was convicted. The recital "and that defendant was armed as alleged" following the words, "Robbery of the first degree" in the judgment constituted error.[3]

## No Illegal Use of Identification Photographs

 Defendant contends that the extra-judicial use of identification photographs by the police in this case violated his right to counsel analogous to that recognized as applicable to pretrial police lineup identifications in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. Even as to lineups, the holding of those

---

[3]Although not mentioned by counsel, we note that the record fails to reflect the giving of any instruction (e.g. CALJIC 116 [Rev.]) to the jury explaining its functions and duty in completing the special verdict forms given to the jury. In view of our ruling that Penal Code, sections 969c, 3024 and 12022 do not apply to this case, discussion on this failure to properly instruct the jury in making findings required by Penal Code, section 1158a is omitted.

cases are not applicable to cases tried prior to June 12, 1967, the date on which those decisions were rendered. (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; *People* v. *Caruso* (1968) 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336].) The trial of this case was completed on August 1, 1966. We, therefore, decline to apply the *Wade* and *Gilbert* theories as to right to counsel to this case.

In these extra-judicial confrontations or uses of photographs for identification purposes, aside from the defendant's right to counsel, there is the question of fairness under the requirements of due process. (*Stovall* v. *Denno, supra,* at p. 301 of 388 U.S. [18 L.Ed.2d at p. 1206, 87 S.Ct. 1972]; *People* v. *Caruso, supra,* 68 Cal.2d at p. 184 et seq.) Under the concept of due process "a deliberate pervicacious [unfair extrajudicial use of photographs] calculated to nail down an identification later to be used in court" has been condemned (*People* v. *Pedercine* (1967) 256 Cal.App.2d 328, 335-337 [63 Cal. Rptr. 873]), whereas a proper use thereof has been upheld in *Feggans, supra.*

This case does not present a situation where the identification of Smith was so shaky that resort to photographs was required to prime the witnesses. There was an in court identification by four different witnesses who were confident that Smith was a participant in the three different robberies occurring on March 14, 15 and 29, 1966. He had the bravado of exposing his features on March 29th, without even wearing dark glasses or a hat to hide his features, to the same group of people that he robbed on March 15th. One witness, a Janet Briggs, who observed Smith on March 15th and again on the 29th from a distance of only a foot or so, identified Smith at the trial without benefit of ever seeing any photographs of Smith prior to that time.

Cleora Shafer testified that she was a hostess-cashier of the Bob Burns Restaurant, 6345 Laurel Canyon, North Hollywood, on March 14, 1966. Between 2 to 3 p.m. that day she was walking through a bank parking lot (about 400 feet away from the bank) with her customary daily deposit when defendant accosted her, pressed something that felt like a gun into her ribs[4] and took a Union Bank money bag containing $1,500 in cash and $500 in checks. Defendant ran and jumped

---

[4]However, this is the count on which the jury returned a special verdict that Smith was not armed.

into a 1956 two-tone green Chevrolet, dropping his hat in his flight to the car. She had identified Smith at the preliminary hearing as the one who robbed her on March 14, 1966, and she identified Smith again at the trial. On direct, she testified she got a good look of defendant and was positive that defendant was the man. On cross-examination, Shafer stated she could not recall whether she had ever seen the defendant prior to the robbery. When asked whether the entire incident was a matter of seconds, she replied, "It happened very quickly." She had picked out a picture of Smith from four photographs shown to her two or three weeks after the robbery at the North Hollywood Police Station. On that occasion one person was exhibited to her, and she said he was not the person who had robbed her. Then later on, she was shown some four photographs. There were two pictures of the defendant, a front and a profile view. and pictures of two other individuals. She recognized Smith from his front view photograph.

Vinson Schendel testified that he was the manager of Superior Caterers, a catering house located at 15229 Keswick, Van Nuys, that supplies catering trucks. He was working on March 15, 1966, with the three girls in his office, namely, Harriet Henderson (office manager), Joann Norvell (secretary), and Janet Briggs (secretary). About 8:30 a.m., two men came to his office. Defendant Smith pointed to his partner who was carrying an automatic pistol. Some confusion occurred as the money was not in its regular place, but he finally put in $1,300 cash and $400 in checks in a cloth bank money bag and gave it to Smith. Two weeks later (March 29, 1966) on the same day of the week (Tuesday) and about the same hour (8:30-8:45 a.m.). the same two who had robbed him on the 15th came and held him up again. Defendant's partner stayed outside the office and covered Schendel and the female employees with a gun similar to that which was used on March 15th. Smith followed Schendel into the office, where Schendel put about $902 in cash in a bank money bag similar to the one used on the previous occasion. This time, Smith's confederate fired the pistol before getting into his car, and a .32 caliber spent shell was recovered within 6 to 8 feet from that spot by a police officer about a half hour later. He described Smith as having dark hair in contrast to the reddish blond hair of his partner (Monfort) and having a swarthy or a dark complexion resembling one of Mexican or Italian descent. He also noted that on March 15th, Smith wore a dark imitation leather jacket and dark glasses and had a small goatee, but had none of these on the 29th.

Schendel identified Smith at the trial and had previously identified him at the preliminary hearing. A day or so before the preliminary hearing, he had picked Smith's photograph out of three or four shown to him by the police who came to his place of business. He was sure that the pictures of three different people were shown to him and that there was only one picture of the defendant.

Officer Gary L. Broda testified that he had arrested Smith and he was the one that showed the photographs to Schendel; that he had taken precautions to have Schendel refrain from talking to or making any signs to the next witness, Joann Norvell, to whom he also showed the photographs from which Schendel had identified Smith.

Joann Norvell testified that she was a secretary at Superior Caterers on March 15, 1966, when they were "held up" and that she got a good look at Smith on the 15th. She corroborated Schendel's testimony as to Smith's wearing a black or charcoal plastic jacket and dark glasses and sporting a slight goatee on the 15th, but that he had none of these on the 29th; also that Smith was of darker complexion than the "run-of-the-mill American." She was certain that Smith and his confederate were the same two persons who robbed Schendel on both occasions. On the 29th, she observed Smith from only a couple of feet away.

She had identified Smith at the preliminary hearing as well as at trial. A few days prior to the preliminary hearing, three sets of photographs were shown to her. Out of the first set shown, there was none that resembled Smith. A second set shown had one of Monfort. On the third occasion, she saw four photographs, all of different persons with only one photograph each of any one individual. She immediately picked Smith out of this last set of four.

Thus, there is no evidence that the pictures were used to prime the witnesses to identify defendant or to nail down what otherwise would be a shaky identification. Due process was not infringed by the use of extra-judicial identification photographs in this case.

PROBATION OFFICER'S REPORT NOT VIOLATIVE OF MIRANDA RIGHTS AND PROPERLY PREPARED AND USED

The presentence investigation report prepared by the probation officer pursuant to section 1203 of the Penal Code under the heading "DEFENDANT'S STATEMENT" read:
"No written statement has been received at the time of this dictation. Orally, defendant indicates that testimony given

was substantially correct, that these robberies occurred over a period of approximately two months, and he was involved in two additional robberies, for which he has not been charged. The gun allegedly belongs to Monfort, who was armed on each instance. For several months prior to his arrest, he was 'using lots of reds and marijuana, and was loaded most of the time.' He spent his share of the money on some clothes and a trip to Las Vegas. He is hoping for commitment to the Youth Authority.''

Smith had testified at the trial and denied his guilt. His appellate counsel characterizes the foregoing statement as confessions violating due process in that it was (1) obtained outside the presence of Smith's counsel, (2) without a showing that Smith was ''advised of his constitutional privilege to remain silent, his right to have counsel present, or . . . of the possible impact of these confessions on his sentencing,'' and (3) because there was no showing that the confessions were voluntary. He argues that the court must have been influenced by these ''illegal confessions'' because the court stated on two occasions that he had read and considered the probation officer's report prior to imposing three consecutive sentences to the state penitentiary on this 20-year-old defendant, despite the probation officer's recommendation that the case be referred to the Youth Authority. The main thrust of his contention is that compliance with the *Miranda* rules by the probation officer must be affirmatively shown before adverse statements reported in the officer's presentence report may be considered by the trial court in taking up the matters of probation and sentence.

The arguments counsel makes are ingenious and raise questions to which there are no easy answers. However, we find no error in the trial judge's having considered the foregoing portion of the presentence report in conjunction with many other factors (including matters which he has observed concerning the defendant in course of the trial pertaining to guilt which often are not reflected in an appellate record) in arriving at his appraisal of the defendant's potential for rehabilitation and the community's need for protection against the increasing tide of armed robberies occurring almost daily in the southern California area.

Everything of which the defendant complains on this particular issue occurred within the framework of probation and sentencing procedures. It was not an attempt to use any statement made to a probation officer in the course of a presentence investigation for the purposes of establishing guilt or inno-

cence, such as occurred in *People* v. *Alesi* (1967) 67 Cal.2d 856 [64 Cal.Rptr. 104, 434 P.2d 360], in which our Supreme Court recognizes the requirements of *Miranda* would come into play. (Cf. *People* v. *Brooks* (1965) 234 Cal.App.2d 662, 671-672, 682 [44 Cal.Rptr. 661].) It could not have affected defendant's motion for new trial because the report reinforced the point he was urging, namely, that he (Smith) personally was not armed; it read, ''The gun allegedly belongs to Monfort, who was armed on each instance.''

Even where the Sixth Amendment right of confrontation of witnesses was in issue, the United States Supreme Court recognized in *Williams* v. *New York* (1948) 337 U.S. 241, 248-249 [93 L.Ed. 1337, 1342-1343, 69 S.Ct. 1079], that ''Modern changes in the treatment of offenders make it more necessary now than a century ago for observance of the distinction in evidential procedure in the trial and sentencing processes.''[5] Imposition of a death sentence by the trial judge upon the basis of hearsay information in a probation report was upheld in face of a jury recommendation for leniency. With reference to this constitutional right and the guilt phase of the trial, the same Justice Black who spoke for the court in *Williams* again speaking for the court stated in *Pointer* v. *Texas* (1965) 380 U.S. 400, 403 [13 L.Ed.2d 923, 926, 85 S.Ct. 1065], ''We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment.'' Despite *Pointer* having been rendered subsequent to *Williams,* Justice Douglas after quoting from *Williams,* in speaking for the court, in *Specht* v. *Patterson* (1967) 386 U.S. 605, 608 [18 L.Ed.2d 326, 329, 87 S.Ct. 1209], states, ''We adhere to *Williams* v. *New York, supra;* . . .'' The rationale behind these cases may be appropriately applied in considering the applicability of the *Miranda* rules to probation and sentencing procedures, although *Miranda* deals with constitutional rights of a defendant against self-incrimination and to counsel and not with confrontation.

The milieu in which this probation report was prepared and used is different from the trial of guilt or innocence. ''In

[5]See Note, *Procedural Due Process at Judicial Sentencing for Felony,* 81 Harv.L.Rev. 821, 823-824, 835-836 (1968). California requires or allows all of the procedural safeguards which the note writer advocates, namely, (1) presence of defendant at sentencing, (2) allocution through counsel, (3) representation by counsel at sentencing, (4) right to see presentence investigation report, and (5) to present evidence in refutation of any facts in report believed by defendant to be wrong.

considering defendant's criticism it must be borne in mind that the guilt of a defendant is not an issue in a probation officer's report." (*People v. Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832]; accord. *People* v. *Cross* (1963) 213 Cal.App.2d 678, 683 [28 Cal.Rptr. 918].) "The purpose of the interview was not to obtain a confession or damaging statements." (*People* v. *Garcia* (1966) 240 Cal.App.2d 9, 12 [49 Cal.Rptr. 146, 15 A.L.R.3d 1352].) The presentence investigation interview by a probation officer is not an "undertaking by the police of a 'process of interrogations that lends itself to eliciting incriminating statements'" (*People* v. *Stewart* (1965) 62 Cal.2d 571, 578 [43 Cal.Rptr. 201, 400 P.2d 97]). "Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders." (*Williams* v. *New York* (1948) *supra,* 337 U.S. 241, 249 [93 L.Ed. 1337, 1343].) Section 1203 of the Penal Code sets forth the purposes for which the presentence probation officer's report is to be used. The report "upon the circumstances surrounding the crime and concerning defendant and his prior record . . . may be taken into consideration either in aggravation or mitigation of punishment . . ." "If the court shall determine that there are circumstances in mitigation of punishment prescribed by law, or that the ends of justice would be subserved by granting probation to the defendant, the court shall have power in its discretion to place defendant on probation . . .; if probation is denied, the clerk of the court must forthwith send a copy of the report and recommendations to the Department of Corrections at the prison or other institution to which the defendant is delivered." The recommendations for leniency by referral to the Youth Authority made by the probation officer are thus communicated to the Adult Authority.

Courts frown upon the use of any statement made by a defendant in his presentence interview with the probation officer for other purposes (*People* v. *Garcia* (1966) *supra,* 240 Cal.App.2d 9, 13), and if such use is attempted, then the safeguards of *Miranda* (*People* v. *Alesi* (1967) *supra*), and those against coerced confessions to apply (*People* v. *Quinn* (1964) 61 Cal.2d 551, 554 [39 Cal.Rptr. 393, 393 P.2d 705]).

The fact that defendant's statement included admissions of having committed other robberies and of using "reds" and marijuana for which he had not been convicted did not render the report improper, especially where the probation officer is enjoined by statute to report "circumstances surrounding the crime" and "the prior record and history" of the defend-

ant. (*Williams* v. *New York* (1948) *supra,* 337 U.S. 241, 244 [93 L.Ed. 1337, 1340] [30 other unprosecuted burglaries]; *People* v. *Overton* (1961) 190 Cal.App.2d 369, 372-373 [11 Cal.Rptr. 885] [defendant's statements intimating additional narcotics activity]; *People* v. *Escobar* (1953) 122 Cal.App.2d 15, 20 [264 P.2d 571] [subsequent robbery charge still pending trial].) In *Overton, supra,* the court expressly states on page 372, "He [defendant] was not entitled to a probation report limited to the facts of this particular [narcotics] offense." Moreover the information was not shockingly new or unexpected. The fact that defendant Smith was under investigation for robberies other than those charged in this case was intimated by Officer Broda's testimony given at trial and defendant's having a history involving marijuana was already disclosed by his prior conviction for a Health and Safety Code, section 11530 violation.

In noting that he had read and considered the probation officer's presentence report, the trial judge was performing a duty imposed by statute and case law. The failure to perform this duty has been held to be reversible error. (*People* v. *Williams* (1963) 223 Cal.App.2d 676, 680 [35 Cal.Rptr. 805]; Pen. Code, § 1203; cf. *People* v. *Surplice* (1962) 203 Cal.App. 2d 784, 791-792 [21 Cal.Rptr. 826].)

CONCLUSION

A striking of the recitals in the judgment finding defendant as being armed with a deadly weapon in committing the two first degree robberies (counts I and II) would mitigate the severity of the judgment. Even in this rectified posture, however, we are unable to say whether the special verdicts under Penal Code, section 1158a, influenced the imposition of consecutive sentences on the three counts (cf. *People* v. *Morton* (1953) 41 Cal.2d 536, 545 [261 P.2d 523]), or the denial of probation. Defendant was an eligible applicant for probation by joint application of *People* v. *Tempelis* (1964) 230 Cal. App.2d 596, 598 [41 Cal.Rptr. 253] and *People* v. *Niles* (1964) 227 Cal.App.2d 749, 758 [39 Cal.Rptr. 11]. Under these circumstances, the judgment should be reversed for the sole and limited purpose of remanding the case to the trial court for re-arraignment for judgment, after first obtaining an updating supplemental probation report (*People* v. *Rojas* (1962) 57 Cal.2d 676 [21 Cal.Rptr. 564, 371 P.2d 300]). "Upon such [re]-arraignment the superior court will have power to consider, and in its discretion to grant or deny, [the] application for probation . . . , and will have power,

and the duty to if it determines that judgments shall again be pronounced, to direct whether the sentences shall run cumulatively or concurrently.'' (*In re Bartges* (1955) 44 Cal.2d 241, 249 [282 P.2d 47].)

Judgment is reversed for the sole and limited purpose of re-arraigning defendant for judgment and taking appropriate subsequent action.

Kaus, P. J., and Stephens, J., concurred.