[Crim. No. 12625.    Second Dist., Div. Two.    Dec. 4, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. TYRONE D. TARPLEY, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Appeal after a nonjury trial from a judgment of conviction on four counts of first degree robbery.

In three of the robberies defendant at revolver point ordered a Los Angeles bus driver to hand over his money. In the fourth robbery defendant's confederate wielded the gun.

Defendant was stopped by a police officer for a traffic violation and subsequently arrested for auto theft. A revolver was found in his car and a bullet which fitted the revolver found on his person. At the police station on 20 December 1965 an investigating officer advised him of his right to have an attorney and to remain silent, and warned him that anything he said might be used against him. Defendant acknowledged the warning and sought to make a phone call to an attorney. When it developed that the attorney's line was busy, defendant said to the officer, "Well, come on back in. I will tell you about it," and he then confessed he had committed the four robberies. Three bus drivers, one of whom had been robbed twice, identified defendant in a lineup. Defendant is black, 6' 5½" tall, and at the time of his trial in March 1966 weighed 230 pounds.

The prosecution introduced the testimony of the bus drivers and the arresting officers and rested. The defendant on the stand denied any participation in the robberies and produced alibi witnesses for the times in question. The prosecution then moved to reopen its case in chief in order to call an additional

witness. When the defense objected, the trial court observed, "Well, I can't see how you can be prejudiced," and overruled the objection. The investigating officer to whom the defendant had confessed then recounted the confession.

## Order of Proof

Defendant, relying on *People* v. *Rodriguez,* 58 Cal. App.2d 415, 418-419 [136 P.2d 626], argues that evidence of his confession should have been introduced as part of the prosecution's case in chief, that it was unfair to permit the prosecution to reopen its original case and thereby rebut defendant's testimony of an alibi. This reliance on *Rodriguez* misconceives the defect in the procedure followed in that case. There, as in *People* v. *Fitzgerald,* 56 Cal.2d 855 [17 Cal.Rptr. 129, 366 P.2d 481], a confession of the accused was introduced by the prosecution as rebuttal evidence, a procedure which ordinarily would have foreclosed the accused from an opportunity to reply to the evidence. What the prosecution should have done, the court said in *Rodriguez,* was obtain permission to reopen its case in chief and then introduce its new evidence. To this new evidence the accused would have had an opportunity to reply. Nonetheless, in both *Rodriguez* and *Fitzgerald* the reviewing court found the error nonprejudicial. In the case at bench the exact procedure prescribed in *Rodriguez* was followed. The prosecution, having evidence which could serve the dual role of proving the crime and of impeaching defendant's testimony with a prior inconsistent statement, secured the court's permission to reopen its case in chief after the defendant had denied the robberies. Since the defendant thereby obtained a full opportunity to reply to the new evidence, we find no merit in his claim of an erroneous order of proof.

## Fairness of Lineup

Defendant next charges that his lineup violated due process of law. He suggests the similarity of his case to *People* v. *Caruso,* 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336], in which the court said: " [T]he uncontradicted testimony of all those who viewed the lineup demonstrates that it was conducted under circumstances which could only have suggested to [the witnesses] that defendant was the man to be charged with the offense. . . . The two victims, the officer in charge of the investigation . . . and the defendant all testified that the other lineup participants did not physically resemble defendant. They were not his size, not one had his dark complexion, and none had dark wavy hair." (68 Cal.2d at p. 187.)

In the case at bench, two of the bus drivers testified that defendant was the tallest and lightest-skinned man in the lineup; one testified that all participants in the lineup were Negroes; the third testified that he did not even need to look at the others and hence could not recall their characteristics. No other witness testified about the composition of the lineup, and there is no indication in the record how much taller or how much lighter-skinned defendant was than other participants in the lineup. The three drivers had each given the police slightly different estimates of the robber's height and weight. Their estimates ranged from 5' 7" to 6' 2" and from 180 to 200 pounds. Thus, far from being unfair to defendant, a lineup which included men of different heights gave the drivers a choice which fell within the range of information on height they had previously furnished. We conclude the record does not support the charge that the conduct of the lineup deprived the defendant of due process of law.

*Services of Counsel*

On the basis of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], defendant contends that after he indicated he wished to consult an attorney, the police should have refrained from listening to his statements until he obtained the services of counsel. But the admissibility of defendant's statement was not governed by *Miranda,* since his trial took place before that decision (*People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]), and under the law as it then stood his statement was admissible. (*People* v. *Hill,* 66 Cal.2d 536, 553 [58 Cal.Rptr. 340, 426 P.2d 908]; *People* v. *Lookadoo,* 66 Cal.2d 307, 317-320 [57 Cal.Rptr. 608, 425 P.2d 208].)

*The Significance of Charges and Findings that the Defendant Was Armed at the Time of the Offense and at the Time of Arrest*

In three counts of robbery the information charges and the judgment recites that the defendant was armed with a deadly weapon at the time of the offense and armed with a concealed deadly weapon at the time of arrest, and in one count of robbery he was armed with a concealed deadly weapon at the time of arrest. Since in each robbery either the defendant or his confederate was armed with a revolver, all robberies were found to be in the first degree. In similar cases in which the presence of arms has determined the degree of the crime, some reviewing courts have stricken recitals in the judgment that the defendant was armed in order to avoid the

imposition of the added punishment called for by section 12022 of the Penal Code. (*People* v. *Flores*, 262 Cal.App.2d 313, 322 [68 Cal.Rptr. 669] ; *People* v. *Sparks*, 257 Cal. App.2d 306, 311-312 [64 Cal.Rptr. 682] ; *People* v. *Thomsen*, 239 Cal.App.2d 84, 97-98 [48 Cal.Rptr. 455].) Section 12022 provides an added period of imprisonment of five years or more for a person who commits a felony while armed, a period which starts to run on the expiration of the sentence imposed for the felony itself. Formerly, the operation of the section was limited to weapons capable of being concealed on the person but under a 1968 amendment the section now applies to all deadly weapons.

If the recital in the judgment that a defendant was armed with a particular weapon during the commission of the crime served only to justify added punishment under section 12022, then the deletion of the recital in cases in which the presence of the weapon controlled the degree of the crime would be fully appropriate. (See *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417].) However, a recital in the judgment that a defendant was armed with a particular weapon during the crime not only may bring into operation the provisions of section 12022, but may also be relevant to the minimum term of sentence and imprisonment required under Penal Code section 3024. That section reads in part: ''The following shall be the minimum term of sentence and imprisonment in certain cases, notwithstanding any other provisions of this code, or any provision of law specifying a lesser sentence: (a) For a person not previously convicted of a felony, but armed with a deadly weapon either at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest, two years; (b) For a person previously convicted of a felony either in this State or elsewhere, and armed with a deadly weapon, either at the time of his commission of the offense, or a concealed deadly weapon at the time of his arrest four years. . . .'' Under section 3024 one who commits an offense while personally armed may become subject to a longer minimum term of sentence and imprisonment than one who commits the same offense unarmed. Likewise one armed with a concealed deadly weapon at the time of arrest may become subject to a longer minimum term than one not so armed. Section 3024, like section 12022 applies only to a person who is himself armed and does not apply to an accomplice whose armed status is derivative. (Pen. Code, §1203; *People* v. *Perkins*, 37 Cal.2d 62, 64-65 [230 P.2d 353] ; *People* v. *Smith*, 259 Cal.App.2d 814 [66 Cal.Rptr. 551], overturning by implication *People* v. *Stevens*,

32 Cal.App.2d 666 [90 P.2d 595] (but see *People* v. *Perryman,* 250 Cal.App.2d 813, 820-821 [58 Cal.Rptr. 921].) The section does not purport to prescribe added punishment by imposing a further term of imprisonment, but rather provides a floor beneath which the minimum term of sentence for the offense itself may not go. (*People* v. *Cooper,* 256 Cal.App.2d 500, 505 [64 Cal.Rptr. 282].) In enacting section 3024 it seems apparent that the Legislature wished to make certain that particular minimums of sentence and imprisonment would be imposed in certain cases. In our view, lengthening the minimum term of sentence and imprisonment under section 3024, even in those instances in which the presence of arms controls the degree of the offense, does not constitute double punishment in violation of Penal Code section 654.

Most courts which have stricken findings in the judgment that a defendant was armed have done so with the operation of section 12022 in mind. (See *People* v. *Sparks,* 257 Cal. App.2d 306 [64 Cal.Rptr. 682]; *People* v. *Smith,* 259 Cal. App.2d 814, 817-818 [66 Cal.Rptr. 551]; *People* v. *Thomsen,* 239 Cal.App.2d 84 [48 Cal.Rptr. 455]; *People* v. *Ford,* 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892].) An exception is *People* v. *Bryant,* 154 Cal.App.2d 121 [315 P.2d 734], in which the particular offense was assault with a deadly weapon. The court reasoned that the offense of assault with a deadly weapon cannot be committed without its perpetrator being armed with a deadly weapon and therefore the specific minimum sentence of section 245 supersedes the more general minimum of section 3024. The court assumed that the California Supreme Court in *Shull, supra,* had held that application of section 3024 to cases where the presence of arms was an element of the crime constituted double punishment. This assumption appears questionable, for although the court found that the imposition in *Shull* of added imprisonment under section 12022 constituted double punishment, to the extent it discussed the minimum term of sentence and imprisonment under section 3024 it implicitly approved the sentence.

We conclude that while section 3024 does not apply to those crimes in which possession of the weapon is generic to the crime—possession of a deadly weapon by a felon (*People* v. *Cooper,* 256 Cal.App.2d 500, 505 [64 Cal.Rptr. 288]), or assault with a deadly weapon (*People* v. *Bryant,* 154 Cal.App. 2d 121, 130 [315 P.2d 734])—it does apply to such crimes as robbery and burglary in which possession of the weapon is an

aggravating circumstance of the offense. A finding pursuant to Penal Code section 969c on the subject of armament is relevant to at least three determinations which may be made concerning a defendant: the minimum term of sentence and imprisonment for his present offense, his eligibility for probation under a future judgment of conviction (Pen. Code, § 1203), and his required sentence under a future judgment of conviction, either in this state or in another state.

Some samples of the application of sections 12022 and 3024 may prove useful. Suppose two different cases of first degree robbery, with four defendants in each case. In the first case, A, B, C, and D are guilty of first degree robbery because A was armed with a pistol and B with a shotgun at the time of the robbery, and C and D were their accomplices. In such case if the judgment recites that at the time of the robbery A was armed with a pistol and B with a shotgun, and at the time of arrest C was armed with a concealed revolver, A, B, and C will be subject to the compulsory minimum term of sentence and imprisonment set out in section 3024 as well as the minimum prescribed for the substantive offense. D will be subject only to the minimum prescribed for the substantive offense since he was not armed at either time. All four will be subject to the same maximum sentence, for while section 12022 purports to apply to A (who was personally armed with a concealable weapon during the crime) and by 1968 amendment now to B, added punishment under the section is not authorized, since being armed at the time of the crime controls the degree of A's and B's offense.

In the second case, W, X, Y, and Z are charged and convicted of first degree robbery for robbing a bus driver. The judgment recites that at the time of the robbery W was armed with a pistol and X with a shotgun, and at the time of arrest Y was armed with a concealed revolver. Here, sections 12022 and 3024 both apply, for being armed is not a necessary element of first degree robbery where the robbery is that of a bus driver. (Pen. Code, § 211a.) Therefore, W having been personally armed with a pistol will receive the added punishment provided by section 12022 and will become subject to the minimum term of sentence and imprisonment provided by section 3024 in addition to the minimum prescribed for the substantive offense; X, under the 1968 amendment, will now become subject to the same sentence as W, but for an offense prior to the effective date of the amendment X will receive the same treatment as Y, that is to say, X and Y, neither of whom was personally armed with a concealable deadly weapon at the

time of the offense, will not receive the added punishment provided by section 12022 but will be subject to the minimum term of sentence and imprisonment provided by section 3024 (X for having a deadly weapon at the time of the crime; Y for having a concealed deadly weapon at the time of arrest) in addition to the minimum prescribed for the substantive offense; Z will receive a sentence to which neither section 12022 nor 3024 applies.

It is therefore our view that in cases where being armed at the time of the commission of the offense affects the degree of the offense, a recital of the judgment that the defendant was armed, although inoperative for purposes of section 12022, should not be stricken from the judgment, since it may be relevant to the minimum term of sentence and imprisonment required by section 3024, and may become relevant in future criminal proceedings to matters involving probation and sentence. Hence, the recitals in the judgment at bench that defendant was armed at the times the robberies were committed and armed at the time of his arrest should stand.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.