[Crim. No. 8226.   Second Dist., Div. Three.   Apr. 19, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. PAZ G. GOMEZ, Defendant and Appellant.

Alfred H. Song and George W. Kell for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Accused of the sale of marijuana Paz G. Gomez was convicted in a jury trial and was sentenced to state prison. He appeals from the judgment.

The points on appeal are (1) insufficiency of the evidence; (2) unwarranted limitation of the cross-examination of a witness for the People; (3) improper receipt of evidence of the People in rebuttal; and (4) failure of the court to instruct of its own motion upon the defense of alibi. We have reached the conclusion that the evidence was sufficient to justify the verdict and that other grounds of appeal are untenable.

In support of the claim of insufficiency of the evidence, it is contended that there was no credible evidence to prove a transaction involving a narcotic or to identify defendant as a participant in such a transaction. There was evidence of the following facts. One Russell Stefan, a user of narcotics, had been given money by police officers of the narcotic detail for use for rendering assistance in the apprehension of narcotic offenders. He has used the money for his own purposes and had reported to the officers that he had been robbed. While under arrest upon a narcotic charge, he offered to assist the officers in investigations. He knew defendant Gomez, having worked with him in the repair of automobiles. He also was familiar with the cars owned and used by defendant. At about 7:30 in the evening of September 28,

1960, Stefan drove his car to the residence of defendant. Dalton Newland, a narcotic officer, was concealed in the rear of the car. Stefan talked with Gomez concerning the purchase of marijuana, telling him that he wanted three kilos. Instructing Stefan to follow him, defendant drove away, followed by Stefan. After traveling for several miles the cars were stopped and defendant told Stefan he had been checking for a "tail." The cars were then driven for a short distance and when they were stopped, defendant told Stefan to wait where they were; defendant drove away, returned in about 15 minutes and stopped opposite the Stefan car. Stefan went to defendant's car and there received a package of marijuana which he turned over to Newland. Stefan had received no money from the officers and passed none to defendant. Stefan testified that he had credit with defendant. Stefan gave testimony of the foregoing facts.

Newland testified that from the rear in Stefan's car where he was concealed under a blanket he witnessed the meeting between Stefan and defendant in front of the latter's house; he heard defendant tell Stefan to follow him; that the car stopped as described by Stefan and he witnessed Stefan's receipt of a package from the driver of defendant's car. He did not see Gomez to identify him after the meeting in front of defendant's house but he identified the car they were following as a Pontiac or an Oldsmobile and as the car in which defendant had driven away from his house. It was the same car as the one from which Stefan received the package. Thus, Stefan was the only one who identified defendant as the one from whom he had received the marijuana. Although this transaction occurred in September 1960, defendant was not arrested until the following March.

In the arguments with respect to the evidence the briefs of defendant dwell upon some discrepancies in the testimony of Newland. The license number of defendant's car was SXR 321. Newland had given it as SXR 321, 291 and 231. The car was a Pontiac but Newland identified it on one occasion as an Oldsmobile.

With respect to the credibility of Stefan it is argued that having misused money given him by the police he had a motive in turning in someone as a narcotic offender. It is also argued that Stefan was released from jail before he had completed the customary term under a sentence of six months and that he had left the state after promising the officers that he would return as a witness in defendant's case. These argu-

ments which were no doubt strongly urged upon the trial are unavailing upon appeal. There was nothing incredible in the testimony of Stefan and the matter of his credibility does not present a question of law. There was sufficient evidence of defendant's guilt.

█ Newland was questioned on cross-examination whether Stefan had not admitted that his statement that he had been robbed of money received from the officers was false. An objection of the People was sustained and the ruling is assigned as error. There was no error. The question did not relate to a material fact. Stefan had admitted on the stand that his statement that he had been robbed was untrue.

In his defense defendant denied that he had had his Pontiac at his residence on the evening of September 28 or that he had seen Stefan that evening or had given him any marijuana. In rebuttal the People called Robert R. Bark, a narcotic officer, who testified that from a distance of about 50 yards from defendant's residence, using Nighthawk binoculars, he saw defendant leaving his house in company with Stefan and saw him drive away in a Pontiac followed by Stefan in his station wagon. He also testified that he knew that Newland was concealed in the Stefan car. Officer Barry testified that he and another officer were parked about a block away from defendant's residence and that at about 7:30 p.m. on September 28 he saw a Pontiac leaving the vicinity of defendant's house followed by Stefan's station wagon. He followed them for a distance but lost track of them. He did not identify the license number of the Pontiac. No objection was made to this evidence offered in rebuttal but it is nevertheless contended that it was error to receive the evidence. █ It is true that the testimony of the two officers was a part of the People's case and in the orderly course of the trial should have been produced before the close of the People's case in chief. (Pen. Code, § 1093, subd. 4.) If the People have a number of witnesses who are able to identify the defendant as the perpetrator of an offense they should use them all in their case in chief, or so many of them as they propose to use in the trial. They have no right to hold out half of them for use in rebuttal. (*People* v. *Rodriguez*, 8 Cal.App.2d 415 [136 P.2d 626].) In the present case the fact that defendant drove away from his house in his car did not become material merely because he testified that he did not do so, and that he was not present at the house on that evening. █ If an objection to the use of the evidence in rebuttal that is now urged had

been registered in the trial, the evidence probably would have been excluded. No sufficient excuse is advanced for the failure to object to the testimony and we must regard the absence of an objection as a waiver of the right to complain.

The court did not err in failing to give *sua sponte* an instruction on the defense of alibi. (*People* v. *Whitson,* 25 Cal.2d 593 [154 P.2d 867].)

Although the offense was committed in September 1960 and defendant was not arrested until the following March, this lapse of time furnished no reason for permitting the defendant to escape prosecution. From the many narcotic cases that have come before us we have learned that it is a common practice to conduct narcotic investigations over long periods of time without making arrests until the investigation has been completed. The purpose is clear; the usefulness of officers engaged in undercover activities would be destroyed or seriously interfered with if arrests were made prematurely while an extensive investigation was in progress. There is nothing illegal in the practice and no reason for interfering with it.

The purported appeal from the order denying defendant's motion for new trial is dismissed. (Pen. Code, § 1237.)

The judgment is affirmed.

Ford, J., and Files, J., concurred.

A petition for a rehearing was denied May 17, 1963, and appellant's petition for a hearing by the Supreme Court was denied June 12, 1963.