Harvey SOSSAMON, A/K/A Mike Foster, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 86 126 CR.

Court of Appeals of Texas, Beaumont.

Oct. 29, 1987.

Jerald D. Crow, Darden, Fowler & Creighton, Conroe, for appellant.

Steve Greene, Asst. Dist. Atty., Liberty, for appellee.

## OPINION

DIES, Chief Justice.

A jury found Appellant guilty of aggravated robbery, enhanced, *TEX.PENAL CODE ANN. sec. 29.03* (Vernon 1974), and the jury also assessed punishment at life in the Texas Department of Corrections. Appeal has been perfected to this court.

Appellant filed motions to suppress a confession and quash his indictment which were denied by the trial court. Our summary of Appellant's evidence will not be as brief as we would like, but a full summary is necessary to explain Appellant's position and the reason we have reached the result hereafter discussed.

Detective Charles L. Burks, Jr., a Montgomery County officer, testified (for the defense) that Appellant had become a suspect in several robberies, and a warrant was issued for his arrest. Appellant was taken into custody in Walker County; Burks came after him. On the drive back to Conroe (Montgomery County), Appellant asked Burks if he "ever traded horses," which he later that day (May 16, 1985) amplified to mean that he could provide other crime information in Montgomery County and other counties if he would receive consideration in Montgomery County. The upshot was that the Montgomery County District Attorney (now a District Judge) plea bargained with Appellant in exchange for information. Appellant told Burks he could provide information on crimes in other counties, including Liberty County. Officials in Harris and McLennan Counties agreed to grant Appellant immunity from indictment in exchange for information as to criminal activity. They abided by their word.

Burks contacted Detective Larry Allen with the Liberty County Sheriff's office by phone several days after May 16, 1985, advising Allen that he had Appellant in custody and, in exchange for immunity from indictment, Appellant could provide them with information on other crimes which had occurred in Liberty County. It is clear Allen agreed to the deal. It is not completely clear whether it was confirmed by the Liberty County Assistant District Attorney. It is clear to us, however, that the District Attorney's office knew of the agreement and used the information provided by Appellant.

Before Appellant gave his Liberty County confession—which implicated others—Burks told Appellant he had Detective Allen's agreement that Appellant would not be indicted or prosecuted in Liberty County in return for the information. Based upon Appellant's confession, warrants were obtained for several men who had participated in Liberty County crimes.

After Appellant was indicted in Liberty County, Burks called Allen to find out the reason. Allen said he did not know.

Burks certainly had no confusion in his mind that Allen agreed for Liberty County and so testified. On the basis of this same agreement, Appellant provided information on 27 or 28 crimes.

Judge Keeshan (then Montgomery County District Attorney) testified about his conversations with Burks and the agreed plea bargain.

Detective Allen confirmed he had told Burks that Liberty County would agree to the deal. It is only fair to comment, however, that Allen told Burks to have the Montgomery County prosecutor's office contact its counterpart in Liberty County.

Appellant testified about the Liberty County deal and that he would not have confessed without Burks' assurance of immunity. He said the statement was true.

■ Appellant has several points of error challenging the trial court's action in refusing to suppress the statement or confession. For a confession to be inadmissible in Texas because it was involuntary and obtained by a promise of benefit, a four-part test must be satisfied. The promise must (1) be of some benefit to the defendant, (2) be positive, (3) be made or sanctioned by a person in authority and (4) be of such character as would be likely to influence the defendant to speak untruthfully. *Washington v. State*, 582 S.W.2d 122, 124 (Tex.Crim.App.1979). *See also TEX.CODE CRIM.PROC.ANN. arts. 38.-21, 38.22, and 38.23* (Vernon 1979).

■ The State has admitted steps (1) and (2) exist. It contests first that the agreement was made by a person in authority.

In the early case of *Thompson v. State*, 19 Tex.Ct.App. 593, 616 (1885), the Court of Appeals used this language:

"If any promise was made or hope given defendant that he would be allowed to turn State's evidence, *it was made by the constable*, Raines, after defendant had told him all about the killing and his participation in it...." (emphasis added)

And, in *Searcy v. State*, 28 Tex.Ct.App. 513, 13 S.W. 782 (1890), the Court refused to allow a confession because the *sheriff* said words to the defendant that "he [the sheriff] would do what he could for him...." And, in *Fisher v. State*, 379 S.W.2d 900, 902 (Tex.Crim.App.1964),[1] the Court said:

" 'The injured party, the employer of the accused, *and officers*, have been held to be within the meaning of "persons within authority." ' " (emphasis added)

The State cites us Court of Appeals cases saying that an officer outside his jurisdiction is not so authorized. We do not like this nicety because:

" 'The actual relation between the parties, and perhaps the relation as it actually appeared to the accused, is the controlling factor.' "

*Fisher v. State*, 379 S.W.2d at 902, quoting *Ethridge v. State*, 133 Tex.Crim. 287, 110 S.W.2d 576 (1937). At any rate, Officer Allen of Liberty County affirmed the agreement. He was the only live witness to testify before the Liberty County Grand Jury when it indicted Appellant. And, he got his information from the confession.

■ The State contends that since the information in the confession proved to be true and, because Appellant testified the confession was true, part (4) of the test ("be of such character as would be likely to influence the defendant to speak untruthfully") is not satisfied. We reject this reasoning. It is the *character* of the promise that is at issue. To give an extreme example, no one would contend that the promise of a popsicle in exchange for a confession of murder would satisfy part (4) of the test. But, an offer of immunity is something else again. The test is grounded in wisdom because no court can be satisfied that all the facts related in a confession are true.

This accused should be acquitted of his Liberty County charge because of public policy, *i.e.*, good morals, natural justice, and interests of the state and its citizens. Annotation, 77 A.L.R. 1312 (1932). Officers of the law must be allowed to make these agreements which solve many otherwise unsolvable offenses. And, how could

---

1. Cited by Judge Clinton in *Washington v. State*, 582 S.W.2d at 124.

any offender be induced to give information if he knows the law allows its officers to break their word? The principle is well stated in 23 C.J.S. *Criminal Law* sec. 825 at 210 (1961):

> "The use of external means of pressure, as by promise or holding out of the hope of immunity or reward, to induce accused to confess guilt is opposed to public policy, *and public policy requires that a confession so obtained be rejected....*" (emphasis supplied, footnotes omitted)

*See also, People v. Rodriguez,* 58 Cal.App. 2d 415, 136 P.2d 626, 629 (1943); *People v. Gonzales,* 24 Cal.2d 870, 151 P.2d 251, 254 (1944); *Grades v. Boles,* 398 F.2d 409 (4th Cir.1968). And this means that the entire confession so obtained must be disregarded. *People v. Fox,* 25 Cal.2d 330, 153 P.2d 729, 734 (1944).

■ So, even though the actual statement in the case at bar was not introduced by the State, the facts contained therein were not available for the State's use. *See Sparks v. State,* 248 Ind. 429, 229 N.E.2d 642, 646 (1967).

In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the defendant, after negotiating with the prosecuting attorney, withdrew his not guilty plea, the prosecutor agreeing to make no recommendation as to the sentence imposed. A new prosecutor, being ignorant of his colleague's commitment, recommended the maximum sentence be imposed. On certiorari, the United States Supreme Court vacated the judgment. Chief Justice Burger, in writing for the majority, said:

> "It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. [citing authority] . . .
>
> "... Those circumstance [safeguards] will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled.*" (emphasis supplied)

*Santobello,* 404 U.S. at 260–63, 92 S.Ct. at 497–99, 30 L.Ed.2d at 432, 433.

Also, several federal circuit courts have followed this policy of holding a United States Attorney's Office bound to a promise made by another federal agent even though the person who made the promise is not part of the United States Attorney's Office. *See United States v. Rodman,* 519 F.2d 1058 (1st Cir.1975). In *Rodman,* the First Circuit affirmed the trial court's dismissal of an indictment where it found that the defendant was induced to give statements to the Securities Exchange Commission upon representations by the Commission that a Securities Exchange Commission official would make a recommendation to the United States Attorney that the defendant not be indicted. The Court held that the trial court's conclusion that the resulting unfairness warranted dismissal of the action was not an abuse of discretion.

In *Santobello,* the Court held that discussions are not only an essential part of the process but a highly desirable part for many reasons. These reasons are:

> "It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pre-trial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned."

Also, in *United States v. Lieber,* 473 F.Supp. 884 (E.D.N.Y.1979), the court held that where the defendants had relied to their prejudice on the government's promise and they had opened themselves to scrutiny by those preparing pre-sentence reports and reordered their lives to adjust to their anticipated public entry of guilty pleas, then such promise would be enforced. In *United States v. Barrett,* 390 F.Supp. 1022, 1024 (D.S.C.1975), the court held that if promises made as a part of the inducement or consideration for a plea

must be fulfilled, there can be no distinction between promises made by prosecutors in the U.S. Attorney's Office and promises made by agents of the Drug Enforcement Administration. Also, *In re Doe,* 410 F.Supp. 1163 (D.Mich.1976), the court, relying on *Santobello,* held that judicial integrity and the interests of justice would be offended if the court ratified the government's broken promise by reaffirming the immunity order. The court said that neither may the government rely on distinctions between express, implied, and apparent authority among its agents in avoiding the effect of its promise, since the solution to agents who bargain away the government's rights is tighter administrative control of the executive branch.

In Texas, the Court of Criminal Appeals has adopted this policy. This policy is to fully carry out the promise or agreement that the State agreed to even though the standard procedure within the State in granting immunity can be obtained only with the knowledge and approval of the court. *See Camron v. State,* 32 Tex.Crim. 180, 22 S.W. 682 (1893). In *Camron,* an agreement was made between the district attorney and one of the parties accused in a criminal offense whereby such party offered testimony in exchange for dismissal of the charges against him. The court held in *Camron* that the agreement was valid and a bar to prosecution of the accused because the accused had fully carried out his portion of the bargain and that the State could do no less.

The Court of Criminal Appeals has reversed a trial ruling stating that although the general rule was that a district attorney could not extend immunity without the consent of the court, where the State, through its district attorney, entered into an agreement for immunity, the State was obligated to respect the agreement. *Carlisle v. State,* 138 Tex.Crim. 530, 137 S.W. 2d 782 (1940).

On the point of who has authority, in the case of *United States v. Carter,* 454 F.2d 426 (4th Cir.1972), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974), the court held that where one U.S. Attorney's Office has made a promise, another U.S. Attorney's Office could not breach the promise since the United States Government is the government in all states and districts.

The United States Supreme Court has recognized these individuals as persons who are in authority: a law enforcement officer, a prosecuting attorney, a private attorney, a magistrate, and coroners. *See Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, 576 (1897). A relatively slight inducement held out by a person in authority may render a confession involuntary because the accused would have reason to believe that such person is not only credible but also in a position to give effect to the inducement.

Also, *Texas* has recognized this very point in the case of *Pitts v. State,* 614 S.W.2d 142, 143 (Tex.Crim.App.1981), where the Court held that a confession based upon an inducement by a promise made or sanctioned by a person in authority is inadmissible.

This case is remanded to the trial court with instructions to enter a judgment of acquittal.

Reversed and Remanded with instructions.

BROOKSHIRE, Justice, dissenting.

I respectfully dissent from the opinion of the majority. The majority opinion does not make it clear that Appellant's confession was not used as evidence at the trial. Appellant was convicted upon the eye-witness testimony given in court by the robbery victims. Appellant's argument on appeal is that the police took advantage of his confession to bring him into court where the victims of the crime identified him as one of three men who robbed them at gunpoint. Therefore, it is clear that Appellant seeks to have this court suppress the identity evidence as the tainted fruit of an illegally-obtained confession. It is not the fruit of any confession, because the victims knew the "face" or "identity information" immediately after the crime as to who assaulted them long before the confessions were made.

The Court of Criminal Appeals has held that the in-court identification of a defendant can never be suppressed as the illegal fruit of an unlawful arrest. *Pichon v. State*, 683 S.W.2d 422 (Tex.Crim.App.1984). Inherent in the position taken by the majority in this case is the notion that a person's rights against unlawful search or arrest are somehow less important than one's right to not be compelled to testify against himself. Otherwise, there is no distinction between the present case and *Pichon, supra.*

Furthermore, the record clearly reveals that Appellant acted as if the peace officers had no direct authority to plea bargain. With regard to the Montgomery County charges against him, Appellant bargained with the Montgomery County District Attorney. Detective Burks, of Montgomery County, merely told Appellant that Detective Allen, from the Liberty County Sheriff's Office, had agreed that no prosecution would be undertaken. Even this matter was disputed. Burks never told Appellant that the District Attorney for Liberty County had agreed to such a deal. Therefore, I would not hold that the trial court erred in finding that Appellant did not rely on Burks' promise in making his confession about Liberty County crimes.

It should be remembered that there was a separate hearing on the Motion to Quash and on the Motion to Suppress Evidence. This hearing was carefully conducted. *Immediately after the Appellant was arrested*, he asked Detective Burks if he ever engaged in "horse trading". Sossamon immediately initiated the conversations that led to the information concerning other crimes that had been committed in Harris County, Liberty County, McLennan County, as well as Comal County. But the first arrangement or first agreement between Burks and Sossamon had to do with offenses committed within Montgomery County. It is interesting to note that Burks testified that one of the very first things he did was to check with the Montgomery County District Attorney before he made *any agreement or deal* with Sossamon. In fact, it is fair to say that Burks knew that the very first step for him was to check with the proper and correct District Attorney, being his own District Attorney, in Montgomery County concerning crimes committed in that county. This was done before any deal or agreement was made between Burks and Sossamon as to the Montgomery County offenses.

In fact, when the then District Attorney took the stand at the hearing conducted outside the presence of the jury, he testified that he and Burks had a number of conversations that extended over more than two weeks period of time before he agreed to authorizing Detective Burks to make any sort of an agreement or deal with Sossamon.

After the Montgomery County situation had been worked out, Detective Burks did call Detective Allen with the Sheriff's Department in Liberty County but there is evidence of probative force that Allen told Burks that he, Burks, would have to have his own District Attorney get in touch with the Liberty County District Attorney before any deal or agreement not to indict or not to prosecute Sossamon could be made. Burks did not see that this precondition was done and accomplished before Sossamon made his statements and gave information concerning the Liberty County offenses. Detective Burks, I feel sure, although acting in good faith, must have known that it was necessary to obtain the approval and authority from the Liberty County District Attorney's office because Burks, himself, requested that his own District Attorney contact the Liberty County District Attorney to see if an agreement and understanding could be reached between the two district attorneys. This agreement and understanding was not accomplished.

But it is clear that Detective Burks definitely remembered that Allen told Burks to have the Montgomery County District Attorney contact the Liberty County District Attorney and obtain approval before any agreement, understanding or deal could be validly made with Sossamon to the effect that Sossamon would not be indicted or prosecuted in Liberty County. Detective Burks also admitted that he did not know

how things worked in Liberty County; but, nevertheless, he went ahead and took a statement from Sossamon and, again, in the record, Burks repeated that he knew that it was necessary for him to have the District Attorney of Montgomery County check this matter out thoroughly and completely with the District Attorney of Liberty County, which was not done.

Sossamon knew of 27 or 28 different crimes committed in different counties. Even before Sossamon was apprehended, Burks knew that Sossamon had been charged, and probably convicted, of one aggravated robbery and two attempted capital murders in 1979, in Harris County, and Sossamon had 3 additional offenses in the State of Virginia in the years 1974 and 1975. When Sossamon's past record was gone into, an objection was made and the trial court announced that this evidence was relevant to go into the state of mind of the Appellant and to demonstrate his experience with law enforcement officers and his past experience with what his rights were.

Detective Burks, still acting in good faith, I feel sure, also knew that, before Sossamon gave a confession, concerning the offenses in Montgomery County, the District Attorney of Montgomery County, himself—now a District Judge—had given personal, direct, face-to-face assurances to Sossamon that he, the District Attorney, would follow and give great weight to Burks' recommendations provided that Sossamon gave sufficient assistance and information relevant to the Montgomery County crimes. It is apparent that, at least at one stage of these matters, Sossamon was doing the plea bargaining himself directly with the Montgomery County District Attorney in a face-to-face situation. I would conclude that there is ample evidence of probative force that the Liberty County District Judge, at the hearing, simply concluded and decided that Sossamon was not relying upon Detective Burks or upon the District Attorney of Montgomery County to insulate him from indictment and prosecution in Liberty County, but, rather, Sossamon was merely setting into motion his own plan or machinations.

In any event, this dissent is certainly justified because it calls attention to a matter that can be remedied and improved by legislation. Solons of Texas can, by appropriate legislation, after proper, adequate and full hearings, weighing the rights of the various parties, enact a statute that would make it clear to law enforcement officers, as well as district attorneys, as to what the proper procedure would be before these law enforcement officers or district attorneys agreed to not indict and not prosecute in exchange for information concerning numerous other crimes—in this case as many as 28—committed in several counties. The lawmakers in Austin can remedy this situation and set out, in detail, the rights, powers and responsibilities of persons situated as were Detective Burks and Detective Allen and the District Attorney of Montgomery County and the District Attorney of Liberty County. The issues before us may be a close question under the present law but they should be addressed and remedied by enlightened legislation.

The real danger in the holding of the court is that a very well experienced and hardened accused—and, here, I speak of a hypothetical case—might actually overreach an inexperience, zealous peace officer and obtain complete immunity from indictment and prosecution for numerous crimes committed in many counties and other jurisdictions without any consultation with the several, other counties or jurisdictions.

Under this record, the trial court could have reasonably concluded, and did conclude, from probative evidence, that Appellant did not rely upon Burks' promise. Hence, I would affirm the judgment of the trial court.