Filed 4/29/26  P. v. Sobhani CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B340650 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA107329) |
| v. | |
| NICOLE SOBHANI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge.  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Deepti Vaadyala, Deputy Attorneys General, for Plaintiff and Respondent.

————————

A jury convicted Nicole Sobhani of three counts of corporal injury to a child. Sobhani appeals, arguing the trial court abused its discretion in admitting the prosecution's rebuttal evidence. We find harmless error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Underlying Offenses

An information charged Sobhani with three counts of corporal injury to a child, Aubrianna S., in violation of Penal Code[1] section 273d, subdivision (a) (counts 1, 2, and 3) and one count of corporal injury to a spouse, in violation of section 273.5, subdivision (a) (count 4). A jury convicted Sobhani of all three section 273d, subdivision (a) counts. It deadlocked on count 4, which the court later dismissed. We do not discuss count 4.

### II. Facts Adduced at Trial

#### A. *Prosecution Case-in-Chief*

Sobhani and her husband Casey married in 2004, and had two children—Aubrianna, born in 2009, and Brady, born in 2011.

##### 1. Count 1

In August 2022, Aubrianna was 13 years old and lived with Sobhani, Casey, and her brother Brady. One day Sobhani entered Aubrianna's room in the morning before school and accused her of stealing a phone charger. Aubrianna denied her mother's accusation. Sobhani then grabbed a phone charger that was in the room and the two engaged in a tug of war over the charging cord, pulling it between them. Sobhani wrapped the

---

[1] Further undesignated statutory references are to the Penal Code.

cord around her daughter's neck and pulled. Aubrianna could not speak or breathe. Eventually Aubrianna was able to remove the cord from around her neck and Sobhani left the room without the charging cord. Aubrianna's neck was visibly bruised and red from the incident. Aubrianna texted a photo of the bruise on her neck to her father Casey, who was out of town at the time.

### 2. Count 2

One month later, in September 2022, Aubrianna was asleep in her room when she woke up to a liquid being poured on her chest. The liquid smelled like bleach. She saw Sobhani in the room holding a bottle with a blue cap. Sobhani muttered something under her breath and left. Aubrianna sat up and the liquid dripped down her body and her skin began to burn. She tried to wipe off the liquid and she took a shower, but the burning did not stop. Aubrianna's skin turned purple and red; multiple showers did not stop the burning. Aubrianna returned to her bedroom and was unable to sleep, so she sat in her bed awake. At some point Sobhani reentered Aubrianna's room, threw a tube of burn cream at her, and left. Aubrianna had burn scars on her neck, chest, shoulder, arms, and knees; some are permanent. Aubrianna took photos of the burns and scabs on her body.

### 3. Count 3

A few days later, Casey noticed burn scars on Aubrianna, who later told him what Sobhani had done. Casey confronted Sobhani about the abuse. Sobhani then confronted Aubrianna for "making stuff up" and punched her in the face, causing a black eye. When Casey asked Aubrianna what had happened to her face, she told him what Sobhani had done.

### 4. Sobhani's Arrest

In late September 2022, Casey called the police after Sobhani became belligerent over the family dog. When police arrived, Casey told them about Sobhani's acts against Aubrianna. When police questioned Aubriana, she confirmed what Sobhani had done to her and showed them the burn scars. Sobhani was arrested.

### B. *Evidentiary Discussion Between Court and Counsel*

Before the defense began its case, the following exchange occurred between court and counsel about issues that could arise if Sobhani testified: "[Prosecutor:] There was also information counsel has had for quite some time in the very beginning of the case that the child Brady was also strangled. And so I would potentially introduce that. [¶] To be quite frank with everyone in this room, . . . I am weighing very carefully and heavily having to bring him in to testify, but if I see that we need to for the case, then I am going to, and they are ready to do so beginning this afternoon."

The court responded: "I think it's likely cross-examination on all those topics becomes admissible. The analysis is a little bit different depending on what incident we are talking about. There's an [Evidence Code section] 1101(b) analysis for prior bad acts. But there's also [an Evidence Code section] 1109 analysis for incidents that do rise to the level of child abuse as defined in [section] 273(d). So I'll parse that out on the record should Ms. Sobhani testify."

Seeking clarification, defense counsel then asked, "[W]ould the court's tentative be at least if [Sobhani] does not testify about other acts of abuse by Casey that that would not be opening the

door to either prior allegations of abuse by her against Casey or either of the children?" The court responded: "Should Ms. Sobhani take the witness stand and say she has always been a devoted, loving mother, she would never hurt her kids, that's a type of representation that may open the door."

C.    *Defense Case*

Sobhani testified in her own defense. Sobhani denied strangling Aubrianna with the phone charging cord and pouring liquid on Aubrianna. Sobhani testified that in September 2022, she noticed burn scars on Aubrianna and thought Aubrianna had spilled something on herself. Sobhani then received photos of the burn scars via text message to her phone from an unknown number and immediately called her own mother to come over. Her mother spoke to Aubrianna, but Sobhani herself never discussed the injuries or the photographs of the injuries with Aubrianna or Casey.

Sobhani also testified that Aubrianna made a report to the school about having food withheld from her. Sobhani testified that child protective services got involved. She denied withholding food from Aubrianna and, upon inquiry from the prosecutor, she denied physically abusing Brady. The following exchange occurred on cross-examination.

"[Prosecutor:] Your son Brady, how old is he now?
"[Sobhani:] 12.
"[Prosecutor:] And how much younger is he than
   Aubrianna?
"[Sobhani:] They are about two and a half years apart
   almost to the month.

5

"[Prosecutor:] Isn't it true that you have also physically abused Brady?

"[Sobhani:] No, and I haven't had an allegation of that.

"[Prosecutor:] You haven't had an allegation of that?

"[Sobhani:] No.

"[Prosecutor:] Isn't it true that you also in the middle of the night went to his room and strangled him as well?

"[Sobhani:] No."

D.     *Prosecution's Rebuttal*

In rebuttal, the prosecutor called Brady to the stand. Brady testified his mother Sobhani once woke him up in the middle of the night looking for a lost bracelet. Brady denied knowing where the bracelet was and suggested Aubrianna had taken it, but Sobhani accused him of lying, screamed at him, and demanded he look for it. Brady testified Sobhani spanked him and squeezed his neck with her hands, which made him "nervous" and "scared." He "panicked" after it happened and continued to look for the bracelet.

Aubrianna also testified on rebuttal. She told her school counselor in seventh grade that Sobhani withheld food from her as a means of punishment. As a result, the counselor called child protective services which initiated a formal investigation. When Sobhani learned of Aubrianna's allegations, she demanded that Aubrianna "reverse" her statement, telling her that otherwise she would become a "foster kid" and go to an "orphanage" and that "would be really bad." Aubrianna attested she felt "[n]ot good" after hearing from her mother that she would become an orphan; Aubrianna eventually retracted her statements.

E.    *Defense Surrebuttal*

On surrebuttal, Sobhani denied the allegations made by her children, attesting that she never told Aubrianna she would become an orphan and denying she ever put her hands around Brady's neck.  She did admit to spanking Brady in the past.

F.    *Defense Objection to Rebuttal*

After the court charged the jury and dismissed it to deliberate, defense counsel made an objection to Brady's rebuttal testimony.  The court responded that the testimony was admissible, responding that "it was [Evidence Code section] 1109 evidence, period.  Full stop."  Defense counsel countered that he did not believe there was "anything that Ms. Sobhani said during her testimony that opened the door for that to be rebuttal."  The prosecutor responded "the door was opened by essentially [Sobhani] painting herself to be the victim in the family," and she "made a blanket statement during her direct examination regarding the fact that she wouldn't hurt her children."  The court ruled the testimony "was proper impeachment and that it's admissible under the relevant rules."

III.   **Verdict and Sentencing**

On June 12, 2024, the jury found Sobhani guilty of counts 1, 2, and 3 involving allegations of corporal injury to Aubrianna. The jury deadlocked on count 4 alleging corporal injury to spouse Casey.  On that count the trial court declared a mistrial.

On August 20, 2024, the trial court sentenced Sobhani to an aggregate term of four years and eight months in county jail pursuant to section 1170, subdivision (h), consisting of the low term of two years on count 1, and one-third the midterm of four years for 16 months on counts 2 and 3, each to be served

7

consecutively to the principal term.  The court granted the People's request to dismiss count 4.

Sobhani filed a timely notice of appeal.

## DISCUSSION

Sobhani contends Brady's testimony on rebuttal, where he was asked about the incident involving her and the missing bracelet, was improper rebuttal evidence.  We agree but find the error harmless.

I.  **Applicable Law and Standard of Review**

"Section 1093, subdivision 4, of the Penal Code provides that after the defendant has offered his evidence, the prosecution may then offer 'rebutting testimony only, unless the court, for good reason, in furtherance of justice . . .' permits it to offer evidence upon its original case.  In a sense all evidence that tends to establish the defendant's guilt over his protestations of innocence rebuts the defendant's case, but it is not all rebuttal evidence within the purpose of section 1093, subdivision 4.  The purpose of the restriction in that section is to assure an orderly presentation of evidence so that the trier of fact will not be confused; to prevent a party from unduly magnifying certain evidence by dramatically introducing it late in the trial; and to avoid any unfair surprise that may result when a party who thinks he has met his opponent's case is suddenly confronted at the end of trial with an additional piece of crucial evidence." (*People v. Carter* (1957) 48 Cal.2d 737, 753 (*Carter*).)  Proper rebuttal evidence does not include a material part of the case in the prosecution's possession that tends to establish the defendant's commission of the crime.  (*Id.* at p. 753.)  It is restricted to evidence made necessary by the defendant's case in

8

the sense that he has introduced new evidence or made assertions that were not implicit in his denial of guilt. (*Id.* at pp. 753–754.) A defendant's reiterated denial of guilt and the principal facts that purportedly establish it does not justify the prosecution's introduction of new evidence to establish that which defendant would clearly have denied from the start. (*Id.* at p. 754.) Changes in the order of proof called for by section 1093 can be made within the sound discretion of the trial court. (*Ibid.*)

Rebuttal evidence is relevant and admissible if it tends to disprove a fact of consequence on which the defendant has introduced evidence. (*People v. Valdez* (2012) 55 Cal.4th 82, 169.) "[E]vidence presented or argued as rebuttal must relate directly to a particular incident or character trait defendant offers in his own behalf." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 792, fn. 24.)

The trial court has broad discretion to determine the admissibility of rebuttal evidence and, absent palpable abuse, an appellate court may not disturb the trial court's exercise of that discretion. (*People v. Gurule* (2002) 28 Cal.4th 557, 656.) A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard or bases its decision on express or implied factual findings not supported by substantial evidence. (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887.)

II.    **Analysis**

Here, on direct examination Sobhani never once raised new facts or evidence as to Brady. Indeed, she never even mentioned his name or referred to him. She restricted her testimony to denying the factual abuse allegations in counts 1, 2, and 3 as to Aubrianna and the corporal injury allegations in count 4 as to her

9

spouse Casey S.  She gave her version of events for some of those counts without giving any testimony whatsoever about Brady. She made no general statements about how she would never abuse her children, how she was being victimized, or how great she was at being a mother.  She offered no character evidence other than her generic denial of the allegations against her.

The one mention of Brady occurred on cross-examination when, out of the blue, the prosecutor twice asked her point blank whether she had ever abused Brady.  She said no twice.  The People contend that by denying any abuse of Brady, Sobhani "opened the door" to the rebuttal evidence they presented through Brady's testimony.  They contend Sobhani's answer is new evidence that they could properly contradict in rebuttal. Not so.

First, the People should have presented Brady's testimony in their case-in-chief as it was evidence to prove guilt.  (§ 1093, subd. (c).)  Indeed, when the trial court overruled Sobhani's objection to the rebuttal evidence, the reason it gave was that the evidence was "1109 evidence, period.  Full stop" and also impeachment evidence.  That would be Evidence Code section 1109 which permits evidence of prior acts of uncharged child abuse to prove propensity to commit child abuse.  That evidence would only have been admissible in rebuttal if Sobhani had put her character in issue when she testified, which she did not.

Nonetheless, section 1094 expressly gives the trial court discretion to depart from the order of proceedings outlined in section 1093 "for good reasons" or "[w]hen the state of the pleadings requires it."  (§ 1094.)  Here, there was no evidence that the state of the pleadings required Brady's testimony.  Nor was any good reason given for departing from the order of proof,

10

that is, for not presenting this potential Evidence Code section 1109 evidence in the case-in-chief so that it could have been properly met in the defense case.  Here, Brady was available that day to testify in the People's case-in-chief.  The People stated they did not want to call Brady to the stand before they rested their case only because he was a "sweet young little boy."  Yet they also announced he was available to testify and they were prepared to call him that afternoon.  They had no problem doing so after the prosecutor raised his name randomly in cross-examination.  It is not hard to fathom that asking the question about abusing Brady on cross-examination and having the boy available to testify immediately after his mother testified was a tactical move rather than an effort to protect a young witness.  Unfair advantage is the precise purpose of the constraints imposed by section 1093 on the order of proof.  (See *Carter*, *supra*, 48 Cal.2d at pp. 753–754 ["The purpose of the restriction . . . is to assure an orderly presentation of evidence so that the trier of fact will not be confused; to prevent a party from unduly magnifying certain evidence by dramatically introducing it late in the trial; and to avoid any unfair surprise that may result when a party who thinks he has met his opponent's case is suddenly confronted at the end of trial with an additional piece of crucial evidence."]; see also *People v. Rodriguez* (1984) 152 Cal.App.3d 289, 295 [" 'Factors to be considered in reviewing the exercise of [the trial court's] discretion include the stage the proceedings had reached . . . , the diligence shown by the moving party in discovering the new evidence, the prospect that the jury would accord it undue emphasis, and the significance of the evidence.' "].)

Further, introduction of rebuttal evidence must be triggered by new evidence introduced *by* the defendant.  (*People v. Valdez, supra*, 55 Cal.4th 82 at p. 169 [evidence presented or argued as rebuttal must relate directly to a particular incident or character trait the defendant offered in his own behalf].)  Sobhani did not introduce any evidence about Brady or her relationship with him nor did she offer evidence about her own character.  It was the People who introduced the subject and elicited Sobhani's response.  We decline to allow the People to sandbag the defendant by introducing a new subject in cross-examination not implicated by defendant's testimony and then claiming the defendant's answer warranted their rebuttal.  Indeed, as the court in *Carter* pointed out, where defendant had entered a not guilty plea to the charges, his denial of other possible evidence of guilt did not furnish new matter for rebuttal.  (*Carter, supra*, 48 Cal.2d at p. 754 [defendant's reiterated denial of guilt and the principal facts that purportedly establish it does not justify the prosecution's introduction of new evidence to establish that which defendant would clearly have denied from the start].)

*People v. Rodriguez* (1943) 58 Cal.App.2d 415 is instructive and its analysis bears repeating.  There the People prosecuted Rodriguez for robbery.  (*Id.* at p. 416.)  Rodriguez was asked on cross-examination whether he had earlier given a complete account of the events of the robbery to a particular police officer.  (*Id.* at p. 418.)  Defendant denied making any such statement.  (*Ibid.*)  After the defense rested and in rebuttal, the police officer was called and testified to a complete and detailed confession made by defendant shortly after he had been booked postarrest.  (*Ibid.*)  The People contended they properly presented the officer's testimony to impeach the defendant.  (*Id.* at pp. 418–419.)

12

The Court of Appeal concluded that the alleged confession "was held back, to be offered in rebuttal and in the guise of impeachment of defendant after his denials upon cross-examination. . . . The procedure was entirely wrong. If the defendant had confessed, proof of the confession was a part of the case of the People and it was the duty of the district attorney to offer it before resting his case, when the testimony was then available and there was no reason for not offering it in chief. When the case of the People is closed and the defense is in, the remainder of the People's case is limited to evidence in rebuttal of that produced by the defense and should be so limited by the court, except where a proper showing is made for reopening the case in chief for the receipt of further evidence. The People have no right to withhold a material part of their evidence which could as well be used in their case in chief, for the sole purpose of using it in rebuttal. . . . The alleged confession was offered to establish facts constituting guilt; the impeachment feature was incidental and comparatively unimportant. It was no more proper for the district attorney to offer the evidence as rebuttal after defendant's denial of the alleged statement, under the pretense that it was offered to impeach the defendant, than it would have been to offer it in rebuttal if the defendant had not been questioned about it at all. It makes no difference here that the testimony as to the confession, aside from being evidence of the fact of guilt, also tended to impeach the defendant. [Citation.] The practice of allowing the district attorney to withhold a part of his case in chief and to offer it after the defendant has closed cannot be approved." (*People v. Rodriguez, supra,* 58 Cal.App.2d at pp. 418–419.)

13

Here, as in *People v. Rodriguez, supra*, 58 Cal.App.2d 415, the use of Brady's testimony to impeach Sobhani was peripheral compared to its use as evidence of propensity to commit child abuse under Evidence Code section 1109. This type of evidence of prior abuse is classically used as evidence supporting guilt, so it was properly part of the People's case-in-chief, whether initially or upon a motion to reopen and showing of good cause under the statute. It was error for the trial court to permit it as it did.

III.  **Prejudice**

Evidentiary error under state law is evaluated for prejudice under the harmless error rule of *People v. Watson* (1956) 46 Cal.2d 818, 836. Under *Watson*, a reviewing court must reverse if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Ibid.*) There is a reasonable probability of a more favorable result within the meaning of *Watson* when there exists at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the verdict. (*People v. Mower* (2002) 28 Cal.4th 457, 484.)

We find no prejudice in the admission of the rebuttal testimony. The evidence of Brady's "abuse" paled in comparison to that inflicted upon Aubrianna. The evidence of Aubrianna's abuse consisted of photos, observation of the injuries, and more detailed testimony by the complaining witness. Further, Brady's testimony was short and somewhat vague as to whether any injury was inflicted when Sobhani allegedly shouted at him and squeezed him.

Importantly, the trial court also offered Sobhani an opportunity to meet the rebuttal evidence with a surrebuttal. Sobhani did so by testifying as to the allegations about her

14

treatment of Brady, effectively having the last word on the subject.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


VIRAMONTES, J.


SCHERB, J.